

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> WILLIAM GLARNER III, AKA William Thomas Clarner, AKA William Thomas Clarner III, AKA Bil Glarner, AKA Bill Thomas Glarner III, AKA William Glarner, Jr., AKA William Thoman Glarner, AKA William Thomas Glarner III, AKA William Thomas Glarner, <br><br> Defendant-Appellant. | No. 19-50293 <br><br> D.C. No. 8:19-cr-00065-DOC-1 <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted October 7, 2021
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: GRABER and CHRISTEN, Circuit Judges, and ZOUHARY,[**] District Judge.

William Glarner III appeals his jury conviction and sentence for attempting to distribute 54.8 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841; attempting to distribute 55.7 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841; and possessing with intent to distribute 1,418 grams of methamphetamine, in violation of 21 U.S.C. § 841. We review de novo a district court's ultimate legal conclusion as to whether a defendant has a protectable privacy interest sufficient to challenge a search and seizure, and we review for clear error the district court's factual findings underlying its decision. *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005). A district court's formulation of jury instructions and application of the Sentencing Guidelines to the facts of a case are reviewed for abuse of discretion. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc)*; United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts, we do not recite them here.

---

[**] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1.      Glarner argues that he had standing to challenge the search of the Audi.  First, we note that the Supreme Court has "abandoned a separate inquiry into a defendant's 'standing' to contest an allegedly illegal search in favor of an inquiry that focuse[s] directly on the substance of the defendant's claim that he or she possessed a 'legitimate expectation of privacy' in the area searched." *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).  Thus, to challenge the search of the Audi, Glarner had only to show"[through] his conduct" that he enjoyed a "legitimate expectation of privacy" in the Audi.  *Smith v. Maryland*, 442 U.S. 735, 740 (1975) (citation omitted).  The government argued in the district court that Glarner's challenge to the search should be dismissed because he did not file a declaration attesting to his interest in the Audi.  But in oral argument before our court, the government was not able to cite authority for the assertion that a declaration is necessary, and we know of none.

Glarner established a reasonable expectation of privacy through the evidence filed with his attorney's declaration, including the Search Warrant Affidavit and the Department of Homeland Security's Report of Investigation.  *See United States v. Freitas*, 716 F.2d 1216, 1220 n.2 (9th Cir. 1983).  The record shows that law enforcement officers knew the Audi was registered to Glarner's son and that Glarner regularly drove it.  They had seen Glarner drive the Audi on numerous

3

occasions over the course of several months when they surveilled him, including when he appeared to be shipping drugs for his son. The Audi was parked outside Glarner's residence when he was arrested, Glarner's roommates confirmed that he drove the car while living at his temporary residence, and Glarner gave the officers access to the car when he was arrested. The record thus shows that Glarner "lawfully possesse[d]" and "control[led" the Audi and enjoyed a "right to exclude others" from it at the time of the search. *See Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978)); *see also United States v. Portillo*, 633 F.2d 1313, 1316-17 (9th Cir. 1980). The district court therefore erred by holding that Glarner lacked "standing" to challenge the search.

2. But we further conclude that the search of the Audi was supported by probable cause. *See United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) ("We may affirm on any ground fairly supported by the record."). The search warrant in this case relies on a number of facts, including: (1) Glarner's use of the Audi to travel to the post office and ship packages that were later discovered to contain methamphetamine; (2) drug paraphernalia seized in trash bags outside Glarner's residence; and (3) experiential knowledge that drug traffickers often store records of drug transactions in their vehicles. Based on the "totality of the

4

circumstances," the record supports the conclusion there was a "fair probability" that evidence relating to drug trafficking would be found in the Audi. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990). We therefore affirm the district court order denying motion to suppress.

3. Glarner submits the district court improperly instructed the jury that it need not find beyond a reasonable doubt that Glarner knew the substance was methamphetamine, or that Glarner knew the quantities involved. However, in *United States v. Collazo,* 984 F.3d 1308, 1315 (9th Cir. 2021) (en banc), we held "[t]he government is not required to prove that the defendant knew (or had an intent) with respect to the drug type and quantity set forth" under 21 U.S.C. § 841 and analogous drug statutes. . Glarner acknowledges that *Collazo* controls and bars relief, and he raises this argument to preserve the issue for further review.

4. Finally, Glarner argues the district court erred by imposing a two-level sentencing enhancement for mass marketing by means of an interactive computer service because: (1) his son, Billy, did not engage in online commercial conduct that qualifies as mass marketing; and (2) Billy's use of the darknet was not "relevant conduct" for the purposes of Glarner's sentence because Glarner himself never accessed the darknet. We disagree. The evidence established that Billy

5

made over 1,500 drug sales by operating a vendor account on a darknet website, a platform that was able to reach large numbers of people for purposes of conducting illicit sales. The fact that Billy did not operate an entire website does not undermine his active use of an interactive computer service. *See United States v. Hanny*, 509 F.3d 916, 920 (8th Cir. 2007). Billy also admitted in his plea agreement that the mass-marketing enhancement applied to his drug-trafficking activities. Further, Billy's use of the darknet was "relevant conduct" for the purposes of Glarner's sentence because Glarner actively participated in his son's drug trafficking scheme by packing drugs and shipping them to customers around the country. The district court did not abuse its discretion by determining that Glarner's actions amounted to "jointly undertaken criminal activity" for purposes of U.S.S.G. § 1B1.3(a)(1).

In summary, although the district court erred in ruling that Defendant lacked "standing," we affirm the conviction on the alternative ground that probable cause supported the search warrant and also affirm the sentence.

**AFFIRMED.**